IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WENDY TERLONGE, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | NO. 22cv5073 |
| | : | |
| MARTIN O'MALLEY, | : | |
| Commissioner of | : | |
| Social Security | : | |
| | : | |
| Defendant. | : | |
| | : | |

**O P I N I O N**

**SCOTT W. REID**                                    **DATE:  May 6, 2024**
**UNITED STATES MAGISTRATE JUDGE**

Wendy Terlonge brought this action under 42 U.S.C. § 405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB").  She has filed a Request for Review to which the Commissioner has responded.  As explained below, I conclude that the Request for Review should be denied, and judgment entered in favor of the Commissioner.

I.      *Factual and Procedural Background*

Terlonge was born on September 14, 1986. Record at 323.  Terlonge was a 31-year-old correction officer and former home health aide, who sustained a work-related injury in April 2018. Record at 323, 329.

On June 23, 2020, Terlonge applied for a period of disability and DIB, alleging disability since April 4, 2018, as result of impairments in her neck, back, and right shoulder.  Record at 488.  Her application was denied initially on October 30, 2020 and upon reconsideration on

January 25, 2021.  Record at 268. Terlonge then requested a hearing before an Administrative

Law Judge ("ALJ").  Record at 268.

A hearing was held in this case on May 19, 2021.  Record at 268. On August 31, 2021,

the ALJ issued a written decision denying benefits.  Record at 268-92.  The Appeals Council

denied Terlonge's request for review on October 17, 2022, permitting the ALJ's decision to

stand as the final decision of the Commissioner of Social Security.  Record at 1.  Terlonge then

filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402

U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence

is relevant evidence which a reasonable mind might deem adequate to support a decision.

*Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied

the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*,

Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically

determinable basis for an impairment that prevents him from engaging in any 'substantial gainful

activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  As explained in the

following agency regulation, each case is evaluated by the Commissioner according to a five-

step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial
> gainful activity, we will find that you are not disabled.  (ii)  At the second step, we
> consider the medical severity of your impairment(s).  If you do not have a severe
> medically determinable physical or mental impairment that meets the duration
> requirement in §404.1590, or a combination of impairments that is severe and meets the
> duration requirement, we will find that you are not disabled.  (iii)  At the third step, we

also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.   *The ALJ's Decision and the Claimant's Request for Review*

The ALJ determined that Terlonge had the severe impairments of cervical degenerative disc disease and right shoulder sprain/strain. Record at 270.  She also found that Terlonge does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Record at 271.

The ALJ found that Terlonge retained the RFC to perform light work with added restrictions for the use of the upper extremities: she can lift and carry a maximum of 10 pounds using the left dominant arm and can only use the right arm as a helper while lifting; she can never push, pull, lift, or reach above shoulder height using the right arm; and she cannot reach overhead using the left arm but can reach in other directions frequently with that arm. Record at

272. Terlonge can balance frequently and stoop, crouch, kneel, and climb ramps and stairs occasionally but can never crawl or climb ladders, ropes, or scaffolds. Record at 272. She can have occasional exposure to extreme cold, humidity, and vibration and no exposure to unprotected heights or unprotected moving mechanical parts. Record at 272.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Terlonge could not return to her former work as it is usually performed.  Record at 290-91. Instead, the vocational expert listed three jobs in the national economy Terlonge could perform with her medical impairments. Record at 290-1. Based on the claimant's age, education, work experience, and residual functional capacity, Terlonge could perform the requirements of representative unskilled light occupations such as retail marker, information clerk, and routing clerk. Record at 291. The ALJ decided, therefore, that Terlonge was not disabled.  Record at 292.

Terlonge contends that the ALJ failed to properly evaluate the medical opinion evidence and therefore the RFC determination is not supported by substantial evidence. Terlonge argues the ALJ erroneously discounted the opinions of medical providers who opined she is more limited in standing and using the upper extremities than the ALJ found. Plaintiff's Brief in Support of Request for Review at 6. Terlonge also claims legal error and harm, generically referencing a failure to evaluate medical opinions in support of this argument. Plaintiff's Brief at 11-2. Terlonge seemingly conflates legal error with a lack of substantial evidence and this Court will not attempt to fill in the gaps in this argument for purposes of this decision. Plaintiff's Brief at 11-12.

IV.    *Conditions and Reported Limitations*

The ALJ determined Terlonge suffers from two severe impairments: cervical degenerative disc disease and right shoulder sprain/strain. Record at 270. A brief overview of these conditions is instructive.

4

i.   *Cervical Degenerative Disc Disease*

Cervical degenerative disc disease, also referred to as "cervical disc degenerative disorder," is most commonly expressed through pain in the patient's neck. Cervical Degenerative Disc Disease, UCLA Health, https://www.uclahealth.org/medical-services/spine/conditions/cervical-degenerative-disc-disease. Deterioration of discs in the moving sections of the spine, such as the cervical and lumbar levels, is a natural occurrence in the process of aging. *Id*. When the deterioration process "occurs more rapidly or prematurely it is considered 'degeneration.'" *Id*. Abnormal motions, compression, or loss of disc height can cause pain that is often most prevalent when the patient is either upright or moving the head and can be alleviated by lying down or reclining. *Id*. Affected nerves in the cervical region reach the back of the head, neck, arms, and hands, sometimes causing "burning, tingling, numbness and pain in these areas." *Id*.

ii.   *Right Shoulder Sprain/Strain*

A shoulder sprain/strain is a musculoskeletal disorder that involves the shoulder joint, bones, muscles, tendons, ligaments, or other soft tissues in the shoulder region. Diagnosing Shoulder Sprains & Strains, NYU Langone Health, https://nyulangone.org/conditions/shoulder-sprains-strains/diagnosis. A shoulder sprain/strain is often characterized by impairment or inability to perform the gross and fine movements involving the shoulder and upper arm region necessary in everyday life. *Id*. A shoulder sprain, "also known as separated shoulder, occurs when the ligaments that support and stabilize the shoulder are stretched or torn, and the bones of the acromioclavicular joint become dislocated or separated." *Id*. Any type of "direct trauma to the joint—for example, from a car accident or fall onto an outstretched arm"— can cause a shoulder sprain. *Id.*

*V.     Discussion*

The ALJ's determination that Terlonge can perform light work with restrictions on use of the upper extremities is supported by substantial evidence. Record at 306-15, 333, 350-5, 366, 563, 759, 763, 778, 791, 794, 800, 807, 1089, 1100, 1102, 1104, 1109, 1120-96, 1249, 1282-3, 1302, 1325, 1329-32, 1351, 1369.

*1.     Dr. Anderson and PA Shelby*

After a thorough consistency and supportability analysis of the medical record, the ALJ accurately determined that Dr. Anderson and PA Shelby's opinions are unpersuasive as they are inconsistent with other evidence of record. Record at 287, 306-15, 333, 351, 355, 366, 504, 778, 789, 791, 794, 800, 807, 1089, 1249, 1283, 1302, 1325. This conclusion is further substantiated by the overall lack of support for their opinions throughout their objective treatment records. Record at 778, 789, 791, 794, 800, 807.

*i.     Consistency*

To determine the persuasiveness of Dr. Anderson and PA Shelby's opinions, the ALJ reviewed their opinions for consistency, which involves comparing a medical opinion with other evidence of record. Record at 286-7. Consistency means "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 416.920c(c)(2). Here, the ALJ compared Dr. Anderson and PA Shelby's opinions that Terlonge should be limited to sedentary work with no repetitive right arm movement with other medical records, found their opinions inconsistent with those records, and accordingly deemed them unpersuasive. Record at 286-7. A close review of the ALJ's explanation shows that the ALJ properly evaluated Dr. Anderson and PA Shelby's opinions as they are inconsistent with other areas of the record.

Record at 306-315, 333, 351, 355, 366, 504, 778, 789, 791, 794, 800, 807, 1089, 1249, 1283, 1302, 1325.

Terlonge mischaracterizes the ALJ's evaluation by arguing that the ALJ erroneously found Dr. Anderson and PA Shelby's opinions to be "well-supported" but also "not consistent with the other evidence of record." Plaintiff's Brief at 4. Terlonge states that the ALJ "claimed the opinions of Dr. Anderson and PA Shelby were inconsistent with the opinion of consultative examiner Dr. Saltzgaber." Plaintiff's Brief at 5. She adds that the ALJ "attempted to have her cake and eat it too by declaring Dr. Saltzgaber's opinion unpersuasive whilst simultaneously using it as a point of comparison in discounting any opinion that conflicted with the RFC finding." Plaintiff's Brief at 5. However, Terlonge fails to recognize the technical nature of the ALJ's analysis, as the ALJ does not reference Dr. Saltzgaber's *opinion* but instead relies on objective *findings* from Dr. Saltzgaber's records as a point of comparison to discount many other opinions in the record.[1] Record at 287, 1100. Terlonge would be correct in her position if the ALJ was using an unpersuasive opinion as a comparator to discount other unpersuasive opinions, but that is not the case here. Record at 287, 1100. The ALJ's comparison of Dr. Anderson and PA Shelby's opinion to Dr. Saltzgaber's documented observations is unproblematic, thus, Terlonge's attempt to find error in the ALJ's analysis on this issue is misplaced.

Terlonge also asserts that the ALJ cherry-picked evidence to support her determination. Plaintiff's Brief at 6. "Cherry-picking" is a term used to describe selective citation of the record to support an opinion that is not supported by a fair and complete review of the entire record. *See Smith v. Berryhill*, No. 17-2661, 2018 WL 7048069, at *9 (E.D. Pa. Nov. 27, 2018).

---

[1] Here, the ALJ cites, "At her September 21, 2020 consultative examination with Dr. Saltzgaber, hand and finger dexterity were intact, and the claimant was able to tie. (Exhibit 13F, at 3)". Record at 287. At that record cite, hand and finger dexterity were noted under the "Fine Motor Activity of Hands" section of Dr. Saltzgaber's objective medical observations, rather than in his opinion. Record at 1100.

Terlonge states that "the ALJ cherry-picked one medical finding out of hundreds of pages in the record to discount the opinions," citing to the ALJ's finding that "the opinions of Dr. Anderson and PA Shelby [were] inconsistent with [Terlonge's] physical therapy records reporting she was not limited in standing." Plaintiff's Brief at 6. To support this argument, Terlonge then cites to fourteen examples of imaging and observations in the medical record that involve the right shoulder injury without any connection to standing limitations. Plaintiff's Brief at 6-7. Terlonge does not explain the connection between these areas in the record and her standing ability, and I will not speculate as to her reasoning for articulating her argument this way. Plaintiff's Brief at 6-7.

The ALJ correctly noted that Dr. Anderson and PA Shelby's opinions are directly inconsistent not only with Terlonge's own reports at several physical therapy appointments that she was not limited in standing at all, but also, with the findings of the state agency consultants, Terlonge's alleged impairments, the lack of diagnoses or treatments for any condition that cause standing limitations, and an overall scarcity of mentions of standing throughout the medical records. Record at 306-15, 333, 351, 355, 366, 504, 554-1359. The physical therapy records are only one example of several areas of the medical record that indicate Terlonge is able to perform the standing requirements of light work. Nowhere in the record does Terlonge allege disability due to any impairment involving her legs or lower back, nor does the medical record demonstrate that her cervical spine and shoulder impairments cause standing limitations. Record at 366, 554-1359. She was never diagnosed or treated for any impairments regarding the legs or lower back. She did not receive treatment for anything beyond the impairments to her right upper extremity and cervical spine. Record at 554-1359. State Agency Consultants Dr. Cheryl Arnella and Dr. Toni Jo Parmelee concluded Terlonge is able to stand and/or walk for a total of about 6 hours in

an 8-hour workday and Dr. Arnella determined Terlonge is capable of performing light work. Record at 333, 336, 351, 355. As there are many inconsistencies between their opinions and the other evidence of record, the ALJ correctly declared Dr. Anderson and PA Shelby's opinions inconsistent with the record without cherry-picking evidence to support her conclusion.

Finally, Terlonge complains that the ALJ's consistency analysis is flawed because she employed circular reasoning "by claiming the opinions were not persuasive because they were inconsistent with her RFC." Plaintiff's Brief at 8. This assertion accuses the ALJ of using her own conclusion as support for her decision. Terlonge refers to the following section of the ALJ's decision:

> "In addition, the undersigned finds that lifting and carrying may be done primarily using the left dominant upper extremity, she cannot push, pull, lift, or reach above shoulder height; using the left dominant upper extremity, she cannot reach overhead, but she can reach in other directions frequently…Therefore, Dr. Anderson's opinion is found to be not persuasive."

Record at 286.

Terlonge again attempts to demonstrate the ALJ's error by examining sections of the ALJ's decision out of context. Plaintiff's Brief at 8. Just prior to this passage, the ALJ summarized Dr. Anderson's findings and his opinion restricting Terlonge to sedentary work with no repetitive right arm movement. Record at 286. The ALJ then addressed areas of the record that are inconsistent with the recommendation of sedentary work. Record at 286. She then inserted her own findings to acknowledge that her determination will exceed Dr. Anderson's recommendation regarding the use of the upper extremities. Record at 286. The ALJ's restriction that Terlonge cannot use her right arm for any pushing, pulling, reaching, or lifting is even more conservative than Dr. Anderson's prohibition on only *repetitive* movements with the right arm. Record at 286, 778. Further, Dr. Anderson did not provide any restrictions for the use of the left

arm, whereas the ALJ restricted overhead reaching with the left arm. Record at 286, 778. The ALJ simply provided a reiteration of her conclusion to demonstrate that she incorporated Terlonge's limitations for use of the upper extremities into her decision, rather than to rule out an opinion using her own conclusion.

The ALJ's finding that Dr. Anderson and PA Shelby's opinions are inconsistent with other areas of the medical records is proper and did not rely on tactics such as cherry-picking or circular reasoning.

### ii.   Supportability

Evaluating the supportability of Dr. Anderson and PA Shelby's opinions further demonstrates that the ALJ's decision is supported by substantial evidence because their conclusion that Terlonge can only perform sedentary work is entirely unsupported by their objective medical findings. Record at 778, 789, 791, 794, 800, 807. Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 416.920c(c)(1). Dr. Anderson and PA Shelby's opinions are unsupported by their objective medical findings because they repeatedly encouraged Terlonge to increase walking and other exercise and never diagnosed or treated her for any condition related to standing. Record at 778, 789, 791, 794, 800, 807. The providers noted that Terlonge had been walking regularly, encouraged her to continue with an active walking program, and Dr. Anderson even wrote that he wanted Terlonge to maximize her exercise activity after she reported to him that she was working an exercise regimen into her routine. Record at 778, 794. They never treated or diagnosed Terlonge with standing limitations and on one occasion PA Shelby even denied a relationship between Terlonge's leg and lower back pain and the shoulder

and cervical spine impairments. Record at 778-794. He wrote: "I have advised her that this is likely due to other issues perhaps in the lumbar spine and not due to the cervical region." Record at 791. This note specifically negates a connection between the shoulder and cervical spine impairments and any standing problems. Record at 789, 791. Beyond these few notes, Dr. Anderson and PA Shelby's treatment notes do not mention standing limitations at all. Record at 778-94. Dr. Anderson and PA Shelby made no effort to reconcile the conflict between their medical notes that suggest Terlonge had no problems with standing and their opinions that she should be limited to sedentary work, nor did they ever explain why Terlonge could not perform light work. Record at 778-94; *See Sanborn v. Commissioner of Social Sec.,* 613 Fed. Appx. 171, *175 (3d Cir. 2015) (Holding that the ALJ was entitled to discount physician's conclusions to the extent that they were not fully grounded in his own clinical findings). Dr. Anderson and PA Shelby's opinions are therefore unsupported by their objective medical findings over the course of their treatment.

Dr. Anderson and PA Shelby's opinions lack both consistency with other evidence of record and support from their own objective medical findings. Record at 306-15, 333, 351, 355, 366, 504, 778, 789, 791, 794, 800, 807, 1089, 1249, 1283, 1302, 1325. The ALJ's determination that their opinions are unpersuasive is therefore supported by substantial evidence.

### 2. Dr. Pavlou

The ALJ's supportability and consistency analysis accurately identified problems with Dr. Pavlou's highly restrictive opinion. Record at 290. The ALJ concluded Dr. Pavlou's opinion is "generally not-well supported by [his] explanation for his opinion" and that his opinion is inconsistent and out of proportion with other evidence of record. Record at 290. Terlonge argues the ALJ's supportability analysis is not supported by substantial evidence and her consistency

analysis is based on cherry-picked evidence and ignorant to Plaintiff's subjective complaints and other evidence of record. Plaintiff's Brief at 9-11. Upon review, the ALJ properly discerned that Dr. Pavlou's opinion is both highly inconsistent with other medical evidence and unsupported by his own objective medical findings. Record at, 306-15, 333, 336, 351, 355, 366, 504, 651, 653, 697, 759, 778, 789, 791, 794, 800, 807, 1037, 1089, 1120-96, 1249, 1282-3, 1302, 1325.

### i.  Supportability

The ALJ concluded Dr. Pavlou's opinion is unpersuasive because it is unsupported by his explanation for his opinion. Record at 290. As described above, the more a provider's objective medical evidence and supporting explanations support his opinion, the more persuasive the opinion is. 20 C.F.R. § 416.920c(c)(1). Terlonge contends that the ALJ's supportability analysis is not supported by substantial evidence, assuming that the ALJ determined Dr. Pavlou's opinion is unsupported because the ALJ did not look past the "four corners" of a checkbox form to evaluate the opinion. Plaintiff's Brief at 8. However, the ALJ did not reference the checkboxes, nor did she state that she limited her evaluation of the opinion to the opinion itself. Record at 290.

Dr. Pavlou's opinion includes the following conclusions:

- Terlonge's condition will frequently interfere with attention and concentration needed to perform simple work tasks;
- Terlonge is only able to:
    - Walk 2-3 city blocks at a time without rest or severe pain;
    - Sit for 2 hours at a time before needing to stand up;
    - Stand for 30 minutes at a time;
    - Stand or walk for less than 2 hours in the 8-hour workday;
    - Sit for 2 hours of the 8-hour workday;
    - Occasionally look down but only rarely turn her head right or left, look up, or hold her head in a static position;
    - Rarely twist, stoop, crouch/squat, climb ladders and stairs;
    - Rarely lift less than 10 pounds and never lift more than 10 pounds at a time;
- Terlonge must walk for 10 minutes every 60 minutes in the 8-hour workday;

- Terlonge requires a job that allows her to shift positions at will between sitting standing and walking;
- Terlonge needs 2-3 15-minute breaks in the 8-hour workday;
- Terlonge has significant limitations with reaching, handling, or fingering;
- Terlonge needs to be absent from work about four days per month.

Record at 1329-33.

Dr. Pavlou's objective treatment records are devoid of any tests, diagnoses, treatments, or observations that provide support for his opinion. Record at 1120-96, 1329-32. Regarding the standing restrictions, Dr. Pavlou did not diagnose, treat, or even mention standing in his records from twenty-one appointments throughout Terlonge's treatment. Record at 1120-96, 1332.  Dr. Pavlou does not provide any explanation for his opinion that Terlonge can only stand for extremely small intervals on the checkbox form itself or anywhere in his treatment records. Record at 1120-96. 1330-1. He also did not explain how he determined Terlonge's maximum lifting ability is rarely lifting "less than 10 lbs." Record at 1331. Despite Terlonge arguing that the ALJ failed to examine the treatment records to find support for Dr. Pavlou's opinion, the treatment records also do not provide ample support for this conclusion. Record at 1120-96. At no point during treatment did Dr. Pavlou perform tests to determine Terlonge's maximum weight-lifting ability or mention avoiding heavy-lifting. Record at 1120-96. The treatment records also do not provide support for his conclusions about Terlonge's ability to twist, stoop, crouch, and climb, interference with attention and focus, number, and length of breaks necessary during the workday, or the need to be absent from work for about 4 days per month. Record at 1120-96. Dr. Pavlou's only conclusions that are somewhat evidenced by objective measurements in the treatment records are that Terlonge can occasionally look down but can only rarely move her head in other directions. Record at 1196, 1332. These conclusions potentially correlate with the results of a cervical spine range of motion test at Terlonge's first appointment, but it is

13

unclear because Dr. Pavlou did not interpret the test results in his notes. Record at 1196, 1332. Although Terlonge accurately states that the ALJ should review more than the four corners of the opinion to determine the supportability, Dr. Pavlou's objective medical findings fail to support his opinion. Plaintiff's Brief at 9; Record at 1120-96. Thus, the ALJ correctly concluded that Dr. Pavlou's opinion is generally unsupported.

    *ii. Consistency*

   In addition to finding Dr. Pavlou's opinion unsupported by his own explanations, the ALJ also appropriately determined his opinion is inconsistent with other evidence of record. Record at 290. An opinion is more persuasive when it is consistent with other medical and nonmedical evidence in the record. 20 C.F.R. § 416.920c(c)(2).  The ALJ described Dr. Pavlou's opinion as "out of proportion" and "out of sync" with other medical records and Terlonge's own testimony. Record at 290. Terlonge again accuses the ALJ of cherry-picking, stating that the ALJ ignored many of Plaintiff's other statements to find Dr. Pavlou's opinion inconsistent. Plaintiff's Brief at 10. Terlonge also complains that the ALJ referenced that Terlonge was released to "modified duty" by her other providers, which is inconsistent with Dr. Pavlou's restrictions. Plaintiff's Brief at 11. However, opinions and observations from other medical providers, Terlonge's demonstrated ability at physical therapy and other appointments, and many of her own subjective reports demonstrate that Terlonge is capable of more than what Dr. Pavlou opined. Record at 307, 333, 336, 351, 355, 1089, 1249, 1302, 1325. Therefore, the ALJ properly determined that Dr. Pavlou's opinion is inconsistent with other evidence of record.

   Dr. Pavlou's conclusion that Terlonge could only rarely lift and carry less than 10 pounds is directly inconsistent with progress notes from many physical therapy appointments at which Terlonge was lifting up to 25 pounds bilaterally. Record at 651, 653, 697, 759, 1037, 1249, 1282.

This conclusion is also inconsistent with other providers' opinions that she should be limited to lifting up to 20 or 30 pounds and the findings of the State Agency Consultants and Dr. Saltzgaber. Dr. Arnella and Dr. Parmelee opined that Terlonge could *frequently* lift and/or carry a maximum of 10 pounds, whereas Dr. Pavlou limited her to *rarely* lifting that weight.[2] Record at 333, 350, 906-8, 1331. Dr. Saltzgaber opined that Terlonge could lift up to 20 pounds up to 2 hours of the 8-hour workday, which is double the maximum weight recommended by Dr. Pavlou for the same amount of time. Record at 1102. Thus, Dr. Pavlou's conclusion on this issue is inconsistent with the other evidence of record.

Perhaps the most inconsistent aspects of Dr. Pavlou's opinion with other evidence of record are his findings regarding Terlonge's ability to stand. Dr. Pavlou opined that Terlonge could not stand for more than 30 minutes at a time, or for more than 2 hours in the 8-hour workday, among other highly restrictive limitations. Record at 1331. This conclusion is directly inconsistent with the areas of the record mentioned above: a lack of alleged impairments to the lower back or legs in the record, Terlonge's subjective reports that she is unlimited in standing, conclusions of the state agency consultants, and an overall deficiency of standing limitations throughout the medical record. Record at 306-15, 333, 351, 355, 366, 504, 778, 789, 791, 794, 800, 807, 1089, 1249, 1283, 1302, 1325. Terlonge did not allege disability due to any impairment involving her legs or lower back, nor do any providers opine that her cervical spine and shoulder impairments cause standing limitations. Record at 366, 778, 789, 791, 794, 800, 807 1089, 1249, 1283, 1302, 1325. There was no diagnosis or treatment for any impairments regarding the legs or lower back. Record at 554-1359. PA Shelby even determined that any leg

---

[2] "Frequently" is defined as "cumulatively more than 1/3 up to 2/3 of an 8-hour day." Record at 333, 350. Dr. Pavlou does not define "rarely," but his opinion indicates "rarely" is less than "occasionally." Record at 1331. "Occasionally" is defined as "cumulatively 1/3 or less of an 8-hour day." Record at 349.

pain or standing problems were unrelated to her neck and shoulder impairments. Record at 791.

Although Terlonge is correct that several times throughout the record her subjective reports

detail intense pain worsened by standing, at other times she either reported she had no standing

limitations or failed to mention standing problems as a symptom at all. Record at 306-315, 1089,

1249, 1283, 1302, 1325. Thus, the ALJ did not have to cherry-pick evidence to reach this

conclusion. Dr. Pavlou's intense restrictions are highly inconsistent with the overwhelming

evidence that Terlonge is not limited in standing.

Finally, although I agree that the ALJ's comparison of Dr. Pavlou's opinion to Dr.

Anderson and PA Shelby's decision to release Terlonge to return to work modified duty is

imprecise, I find that it does not negate the inconsistencies between Dr. Pavlou's opinion and

other evidence of record. Plaintiff's Brief at 11. Medical and nonmedical evidence throughout

the record suggests Terlonge is less limited than Dr. Pavlou opined. Thus, the ALJ correctly

characterized Dr. Pavlou's opinion as inconsistent.

The ALJ's determination that Dr. Pavlou's opinion is unpersuasive is supported by

substantial evidence because it is both unsupported by his objective medical findings and

inconsistent with other evidence of record.

VI.    *The ALJ Incorporated Terlonge's Limitations on Use of her Upper-Extremities into the*
       *RFC Assessment.*

Finally, while it is evident from the medical record that many of Terlonge's providers had

reservations about her ability to use her upper extremities at work, few of them restricted her use

of the right arm as significantly as the ALJ. As discussed previously, some providers limited

Terlonge to "no repetitive right arm movement," others restricted her ability to lift and carry

different weights, and even more failed to restrict the use of the upper extremities to any extent

consistent with their observations of decreased range of motion, weakness, and pain. Record at

778, 908, 1050, 1052, 1102, 1249, 1301, 1325, 1331. The ALJ considered the objective medical evidence and took the restrictions one step further – prohibiting Terlonge from using the right arm for any strenuous activity beyond helping the left arm in lifting. Record at 272. Rather than only avoiding repetitive movement, the ALJ's recommendation ensures Terlonge will not use her right arm for any action, since she is able to rely on the left arm for all but overhead reaching. Because these added restrictions to light work provide for Terlonge's upper extremity limitations, the ALJ's decision is supported by substantial evidence.

VII.    Conclusion

        In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

                                        BY THE COURT:

                                        */s/ Scott W. Reid*

                                        _____
                                        SCOTT W. REID
                                        UNITED STATES MAGISTRATE JUDGE